UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: WHITNEY BELL, | ) | No. 20-14918 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| WHITNEY BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Cassling |
| v. | ) | |
| | ) | No. 20-270 |
| DEPARTMENT OF EDUCATION/NELNET, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PRETRIAL STATEMENT**

Pursuant to the court's Pretrial Order for Video Trial (Dkt. 23), plaintiff Whitney Bell and defendant United States Department of Education submit the following pretrial statement:

I.  Brief Statement of Theory of Each Claim and Each Defense

    A.  Plaintiff's Statement of the Theory of Her Claim

The theory of this adversary proceeding is like an illustration of a car that was sold to a young girl as a lemon. In search of a good vehicle to assist her achieving her goals she receives an advertisement to her door in the local paper, front page. The advertisement boasts about incentives that will be offered for financing a vehicle at a certain dealership. The vehicle that caught her eye sticker price was $16,347.00. The sales manager personally speaks with the girl telling her how great the vehicle is that she is interested in and what it will do for her. The sales manager even writes down that the girl is guaranteed oil changes and free car washes any time. However, after she signs for the loan, everything changes. The car doesn't even pull off the lot. The dealer tells the young girl "It's hard for us to help you because you are a girl." The vehicle is towed to her

home at her expense and sits there. She goes to all sorts of car repairmen and asks if they can fix the car or pay her for certain parts. They tell her that due to the car not having certain components the car is useless to them. She still has to make payments on the vehicle and the insurance. She ends up buying a hooptie car just to be able to get around. The girl feels hopeless! The vehicle has become an undue hardship with no benefit. The girl's two family members need the girl's help. One of her family members is even terminally ill and needs an organ donated. The girl donates the organ but her life and body are forever changed. The girl has to move her family and even has to have the vehicle towed with her. Then the girl learns the fraudulent dealership closed because it lost the ability to give out loans. She discovered after research that the dealership even falsely certified a fact on the contract that made it void from the start. She finally learned that she can contact the lender and that they have a program that protects consumers that were sold vehicles that are lemons. Finally some hope! However, this well known lender conducts themselves as dishonest and fraudulent as the dealership, if not worse. So she prayerfully makes the decision to take the well known lender to court. The lender has a big attorney that knows his field well! The attorney asks the court to dismiss the case with prejudice due to the girl's very limited knowledge of court procedure. However the girl stays up all night praying and asking her God Jehovah to help her find a defense. She was made successful. The judge presiding over the case is fair and allows the girl to amend her pleading. It will be interesting to see if justice will be done in the girl's case.

I, Plaintiff Whitney Bell, was that young girl. The fraudulent dealership represents Ridley Lowell Business and Technical Institute. The vehicle advertised in the paper with incentives and promises represents the Electrical Systems Technician program advertised by Ridley Lowell Business and technical institute. The family is my mother and sister Wanda and Ronyelle Bell. The hooptie car

was any employment I had to take on to get around sort of speak outside of my trade. The well known lender with the big attorney is Defendant the Department of Education and their Assistant Attorney of the State Mr. DeCelles. Jehovah God is the Almighty God spoken of in the Bible whose name means "He causes to become". The presiding Judge is the Honorable Judge Cassling. This is my case._Bell v U.S Department of Education, No. 20-270.

Brunner Test factors No. 1

"Poverty. Definition: the state of being extremely poor."

The poverty line in Illinois for 2020 for an individual was $12,760.00. My total annual income for 2020 for the temporary full time work at Cook County, and Busy Bees was $9389.00. That puts me below the poverty line by $3371.00 dollars. As a caregiver on my mother's Section 8 voucher I have no rights to the voucher or unit. As of September 1, 2021 my expenses became: Food:$80.00, Rent: $144.00, Utilities: $85.00, Phone Bill: 82.00, Internet: $44.50, Laundry: $15.00=$450.50. I was given $745.00 when my sister died as a gift and I paid all listed bills excluding food. Even with a Income driven repayment plan it has not and will not assist me in meeting the minimal standard of living, because I already do not meet the minimal standard of living. It also would not provide me the relief from my undue hardship that a loan discharge would provide. This loan should have been discharged by the Defendant the U.S Department of

Education, according to their regulation 34 CFR 685.215. Regarding the Brunner test factor No. 1, poverty, I am below it. Q.E.D.

Brunner Test factors No. 2

Persistence. Definition.Continuing to exist or endure over a prolonged period.

My undue hardship did not begin when I filed this adversary proceeding on July 31, 2020 against the Defendant the Department of Education. It started the day the Department of Education failed to act for the purpose for which they were founded and approved these falsely certified loans. I am now 31 years old. I have one kidney, which has changed my body and energy forever. I have had no experience in a trade I went to school for over 10 years ago. I was promised in writing that I would be assisted with "lifetime" job placement in the electrical field. However they did not even make an effort to assist me with placement or internship while I was still in school or graduated. My internship was at a nail salon that I already was working for. This undue hardship has been persisting and most certainly is going to continue to persist for the duration of this loan because

my undue hardship is constant. I cannot, have not, and will not benefit from this loan. Factor No.2, Persistence,QED.

Brunner Test factors No. 3

Good Faith. Definition. Honesty or sincerity of intention.

In 2014 I took on full time overnight work with the Long Island Railroad after searching for electrical work and not being hired from March 2011-February 2013. I worked for the LIRR until October 2014. I have to take a three months absence after the surgery from May to August. It was very stressful on my body when I returned to work, I had to lift very heavy mop buckets on the train, and take off heavy bags of waste off the train. I also applied around that time for forbearance. My sister's physician told her that she needed to avoid catching infection to prolong her kidney. Due to cold weather transmitting disease easier it was recommended that we move to a warm climate. I wanted to keep my sister safe and the cost of living in NY was so high, so we decided to move to Arizona. I was out of work from October 2014-January 2016; then again on June 2016- September 11, 2017. The Department of Education even entered me into forbearances I did not consent to twice. I reached out to the Department of Education in good faith to have my loans discharged for False Certification by Ridley Lowell Business and Technical Institute. The

5

Department of Education showed that they are not acting in good faith by denying to discharge my loans for false certification. Factor No. 3. Good faith, QED.

    B.    Department of Education's Statement of the Theory of Its Defense

The only claim asserted in Ms. Bell's amended complaint is that the student loan debt she owes to the Department of Education is dischargeable under 11 U.S.C. § 523(a)(8). Amended Complaint (Dkt. 11). Accordingly, the Department of Education's defense is that Ms. Bell cannot meet her burden to prove that repayment of her student loans from the Department of Education would impose an "undue hardship" on her under § 523(a)(8). Undue hardship under § 523(a)(8) is governed by the test articulated in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987). *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993). According to the *Brunner* test, to prove that repayment of her loans would impose an "undue hardship" justifying discharge under 11 U.S.C. § 523(a)(8), the debtor must show:

> (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for [himself] and [his] dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

*Roberson*, 999 F.2d at 1135. To have her loans discharged, Ms. Bell "must satisfy each element of the *Brunner* test." *Tetzlaff v. Educ. Credit Mgmt. Corp.*, 794 F.3d 756, 759 (7th Cir. 2015).

As an initial matter, Ms. Bell could maintain a minimal standard of living if she participated in an income-driven repayment plan. As of the time of her deposition, Ms. Bell was unemployed and her housing and living expenses were paid for by her mother and sister, with whom she lived. Assuming that Ms. Bell has no income, she would likely qualify for $0 monthly payments under

6

an income-driven repayment plan offered by the Department of Education. Indeed, Ms. Bell has previously participated in an income-driven repayment plan, under which her monthly payments were $0. The court may consider the availability of an income-driven repayment plan in evaluating the first part of the *Brunner* standard. *Chance v. United States* (*In re Chance*), 600 B.R. 51, 58 (Bankr. S.D. Ind. 2019) ("A court may consider whether the debtor can pay an amount under an IBR plan and still maintain a minimal standard of living.").

Even if the court finds that Ms. Bell satisfies the first prong of the *Brunner* test, she cannot meet the second prong, which requires "additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time." *Goulet*, 284 F.3d at 777 (quoting *Roberson*, 999 F.2d at 1136). "Examples of such additional circumstances provided by the Seventh Circuit include 'psychiatric problems, lack of useable job skills and severely limited education.'" *In re Davis*, 608 B.R. 693, 705 (Bankr. N.D. Ill. 2019) (quoting *Goulet*, 284 F.3d at 778). Ms. Bell's loan balance is less than $16,500—a relatively modest amount. She is 31 years old, healthy, and has no children. She recently held a full-time job with Cook County. Ms. Bell may testify that she is not currently pursuing full time work because she helps care for her mother, who has health issues. But her mother is not a legal dependent and therefore, for purposes of the *Brunner* standard, "should not hinder [Ms. Bell] from seeking employment." *In re Coveney*, 192 B.R. 140, 143 (Bankr. W.D. Tex. 1996). In any event, Ms. Bell is pursuing part-time work. Accordingly, there is no basis to conclude that exceptional circumstances preclude Ms. Bell from repaying her loan over an extended period of time.

Finally, Ms. Bell cannot demonstrate that she has made good faith efforts to repay her loans. Good faith is measured by the debtor's "efforts to obtain employment, maximize income, and minimize expenses." *Roberson*, 999 F.2d at 1136. "[G]ood faith is also assessed by the

7

debtor's demonstrated efforts to pay off his existing loans." *Tetzlaff,* 794 F.3d at 760. Ms. Bell has not maximized her income, even if that is because she had decided to care for her mother and sister. *See Coveney*, 192 B.R. at 144 (no showing of good faith where debtor decided to care for mother rather than seeking employment opportunities). In addition, she has made less than $900 in payments on her student loans, with the last payment made in 2014. Accordingly, Ms. Bell cannot satisfy the third prong of the *Brunner* test.

II.     Statement of Stipulated Facts

1. Ms. Bell enrolled in a one-year Electrical Systems Technician Program at Ridley-Lowell Business and Technical Institute. The program began on April 8, 2011, and Ms. Bell graduated on March 20, 2012.

2. Ms. Bell obtained a high school equivalency diploma from the University of the State of New York in June 2011 based on earning satisfactory scores on the GED test.

3. Ms. Bell donated her kidney to her sister Ronyelle Bell on May 8, 2014.

4. Ms. Bell was employed part time at Office Depot for approximately six months in 2016, working 15-20 hours per week and earning approximately $9 per hour.

5. The U.S Department of Education first withdrew its recognition of the Accrediting Counsel for Independent Colleges and Schools (ACICS) in December 2016. ACICS was the accreditor of numerous academic institutions, including Ridley-Lowell Business and Technical Institute.

6. Ms. Bell worked on and off approximately 15-20 hours per week at Busy Bees Learning School in Chicago as an assistant teacher from September 2017 to January 2020, where she earned between $12 and $13 per hour.

7. Ridley-Lowell Business and Technical Institute closed on April 4, 2018.

8. Ms. Bell was employed as a janitor by Cook County, Illinois, for approximately 120 days beginning on August 17, 2020 to December 11, 2020. In that position, she earned approximately $18 per hour and earned a net income of $1,152 every two weeks.

9. The Department of Education denied both of Ms. Bell's applications for administrative loan discharge. The Department of Education sent Ms. Bell a denial letter for a school closure discharge on June 15, 2020; a separate denial letter for a false certification discharge related to ability to benefit was sent to her on November 23, 2020.

10. Ms. Bell's sister, Ronyelle Bell, received benefits from the Social Security Administration, and Ms. Bell's mother receives benefits from SSA.

III. Parties' Statements of Material Facts in Dispute

A. Plaintiff's Statement of Material Facts in Dispute

1. Ridley Lowell Business and Technical Institute knowingly applied for federal student loans for Plaintiff Whitney Bell without her having a GED to benefit from the program.

2. The DOE against their regulation pursuant to 34 CFR 685.215 neglected its duty by approving Federal student Loans for Plaintiff Whitney Bell and disbursing them to Ridley Lowell on April 08, 2011 before verifying that Ms. Bell had a High school or GED Diploma to benefit.

3. Ridley Lowell Business and Technical Institute informed Ms. Bell multiple times stated that they could not place her in a internship or help with job placement due to it being hard to place a woman.

4. Ridley Lowell promised that graduated students would have free lifetime electrical classes and would assist with internship and job placement.

9

5. Plaintiff Whitney Bell became the sole caregiver and live-in-aide for Ronyelle Bell from May 2012-August 18, 2021 and Wanda Bell from May 2012-present.

6. Plaintiff Whitney Bell search for electrical work from March 2011-Feburary 2013 and searched for electrical maintenance and other types of work from October 2014-January 2017.

7. Plaintiff Whitney Bell was out of work for three years from October 2014-January 2016 and from on or about June 2016-September 11, 2017.

8. Plaintiff Whitney Bell's mother Wanda Bell is legally blind and was recently diagnosed with has dementia on or about June 2021.

9. Plaintiff Whitney Bell had to move her sister and mother to Phoenix AZ, Houston, TX, Chicago, IL and New Jersey for medical reasons.

10. Plaintiff Whitney Bell could not take on fulltime work more than 120 days due to caring for her 72 year old mother and severely ill disabled sister from 2012-2021.

11. Plaintiff Whitney Bell does not have the knowledge, energy, ability, or skill to work in the electrical trade due to not being able to work in her field and having one kidney.

12. Plaintiff Whitney Bell has been unemployed from December 11, 2020-present.

B. Department of Education's Statement of Material Facts in Dispute

1. The Department of Education disputes that Ms. Bell cannot maintain, based on current income and expenses, a minimal standard of living if forced to repay her student loans.

2. The Department of Education disputes that additional circumstances exist indicating that Ms. Bell's state of affairs is likely to persist for a significant portion of the repayment period of her student loans.

3. The Department of Education disputes that Ms. Bell has made a good faith effort to repay her student loans.

IV. Witness Lists

    A. Plaintiff's Witness List

1. I may call Rubin Lloyd. Rubin is my Brother-in-law that has been directly involved in my situation and is my mother and sister's insurance agent.

2. I reserve the right to cross examine any witnesses called by the Department of Education.

    B. Department of Education's Witness List

1. The Department of Education may call plaintiff Whitney Bell, although the Department of Education will likely be able to complete its examination of Ms. Bell on cross examination. Ms. Bell's phone number is (917) 945-8134 and her e-mail address is whitneybell2704@gmail.com. Ms. Bell would likely testify concerning facts pertaining to the *Brunner* standard, as discussed above in the Department of Education's statement of its theory of its defense.

2. The Department of Education may call Christopher Bolander, a loan analyst employed by the Department of Education. Mr. Bolander's phone number is (415) 486-5385 and his e-mail address is christopher.bolander@ed.gov. He would likely testify concerning Ms. Bell's student loans, including the balance of the loans, Ms. Bell's payment history, and her participation in payment plans offered by the Department of Education.

3. The Department of Education reserves the right to cross examine any witness called by Whitney Bell.

V. Exhibits Lists

  A. Plaintiff's Exhibit List

1. Ridley Lowell Business and Technical institute program.

2. Ridley Lowell Welcome Letter.

3. Ridney Lowell Transcript.

4. Ridley Lowell President's list awards.

5. GED and GED Transcript.

6. Kidney Transplant Donor- Leave of Absence-LIRR.

7. Car Note.

8. CHA-Live-In-Aide accommodation approval.

9. Income tax 2018.

10. Income Tax 2019.

11. Income 2020.

12. Returned to Busy Bees to work for 12/16/2020-12/31/2019.

13. Last Check from Busy Bees.

B. Department of Education's Exhibit List

1. E-mail dated April 12, 2021 from Whitney Bell to David DeCelles with supplemental interrogatory responses.

**Objection:** Ms. Bell provided the following objection to counsel for the Department of Education: "I also Object to the email dated April 12, 2021, because it does not contain the full interrogatory questions or answers that I gave. One being the expenses my mother pays and sister paid before she died on August 18, 2021."

2. Master Promissory Note for Whitney Bell, dated January 10, 2011.

**Objection:** Ms. Bell provided the following objection to counsel for the Department of Education: "I object to the date the Department of Education says it received the

promissory note, May, 02 2011. Also you do not have the full promissory note, only the last page. so that can be the only page you refer to as I do not have the full document."

3. Income-Driven Repayment Plan Request submitted by Whitney Bell, dated February 2, 2017.

4. Whitney Bell's CapitalOne Bank Statement for September 2020.

5. Whitney Bell's CapitalOne Bank Statement for October 2020.

6. Whitney Bell's CapitalOne Bank Statement for November 2020.

7. Whitney Bell's CapitalOne Bank Statement for December 2020.

8. U.S. Department of Education Account Summary for Whitney Bell.

    Respectfully submitted,

    JOHN R. LAUSCH, Jr.
    United States Attorney

    By: s/ David H. DeCelles
       DAVID H. DeCELLES
       Assistant United States Attorney
       219 South Dearborn Street
       Chicago, Illinois 60604
       (312) 353-4220
       david.decelles@usa.doj.gov

**Certificate of Service**

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Civ. P. 5, L.R. 7005-1, and the Administrative Procedures for the Case Management/Electronic Case Filing System, the following document:

PRETRIAL STATEMENT

was sent by Federal Express and electronic mail on September 20, 2021, to the following non-ECF filer:

>Whitney Bell
>54 Gardner Ave #2
>Jersey City, NJ 07304
>whitneybell2704@gmail.com

>s/ David H. DeCelles
>DAVID H. DeCELLES
>Assistant United States Attorney
>219 South Dearborn Street
>Chicago, Illinois 60604
>(312) 353-4220
>david.decelles@usdoj.gov